UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASMEN BOLEN,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 2:25-cv-03056-CSK<br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br>(ECF Nos. 10, 12) |

Plaintiff Tasmen Bolen seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is GRANTED IN PART, DENIED IN PART, the Commissioner's cross-motion is GRANTED IN PART, DENIED IN PART, and the final decision of the Commissioner is REVERSED AND REMANDED.

/ / /

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and proceeds on the consent of all parties. (ECF Nos. 6, 7, 8.)

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On July 20, 2022, Plaintiff applied for supplemental security income under Title XVI of the Social Security Act, alleging disability beginning February 14, 2015. AT 189-196. Plaintiff claimed disability due to a previous spinal surgery and depression. AT 220. Plaintiff's application was denied initially and upon reconsideration, and she sought review before an Administrative Law Judge ("ALJ"). AT 92-96, 98-99, 109-111. Plaintiff appeared with a representative at an in-person hearing on August 26, 2024 before an ALJ, where Plaintiff testified about her impairments and a vocational expert ("VE")

testified about hypothetical available jobs in the national economy. AT 36-53.

On October 17, 2024, the ALJ issued a decision finding Plaintiff was not disabled. AT 14-29. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 20, 2022. AT 19. At step two, the ALJ determined Plaintiff had the following severe impairments: right shoulder fracture status post surgeries, discitis-osteomyelitis of the thoracic spine, and obesity. *Id*.

The ALJ also concluded that Plaintiff did not have a severe impairment in her alleged depression, bipolar disorder, and borderline personality disorder. *Id*. In making this conclusion, the ALJ considered the "Paragraph B" criteria for her mental impairments.[2] AT 20. The ALJ determined that Plaintiff had mild limitations in all four functional areas. AT 20-21. Further, the ALJ analyzed the medical opinion testimonies of Dr. Howard S. Leizer, Ph.D., a state agency medical consultant who examined Plaintiff at her initial disability determination, (AT 55-76) and Dr. Morgen Aita, Ph.D., who examined Plaintiff at a mental consultative examination on October 5, 2022 (AT 827-835).

Dr. Leizer concluded that Plaintiff had no significant mental limitations, which the ALJ found persuasive. AT 22 (citing AT 55-76). The ALJ found this opinion to be supported by medical records documenting "generally adequate" mental functioning and consistent with no evidence showing ongoing mental health treatment. *Id*. (citing AT 461-462 821-835). While the ALJ acknowledged that Plaintiff is homeless and may lack health insurance or other means to finance this treatment, he concluded that "there is no definitive evidence" Plaintiff was unable to obtain low-cost or no-cost treatment. *Id*.

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

Dr. Aita found significant limitations in Plaintiff's ability to interact appropriately with others, adapt to usual work stress, complete a normal workday or workweek, and respond appropriately to changes in the work setting. *Id*. (citing AT 827-835). The ALJ found this opinion unsupported because the consultative examination showed adequate mental functioning. *Id*. The ALJ further concluded this opinion was inconsistent with other medical records in the administrative transcript showing adequate mental functioning and a lack of medical records in the administrative transcript showing Plaintiff was undergoing ongoing mental health treatment. *Id*. (citing AT 461-462 821-835, 37-49). The ALJ also found this opinion to be inconsistent with a function report completed by Plaintiff dated November 23, 2023, where Plaintiff admitted to having an ability to get along well with authority figures, go out alone, follow written instructions, pay attention as long as needed, and finish what she starts. *Id*. (citing AT 255-264). Additionally, the ALJ found that Plaintiff could drive, ride a bicycle, use public transit or ride-share applications, play games on her phone and use the internet, text, manage finances, prepare simple meals, do laundry, and shop in stores. *Id*. (citing AT 20). Like in the analysis for Dr. Leizer's testimony, the ALJ acknowledged Plaintiff's homelessness and corresponding lack of means to finance mental health treatment, but concluded that Plaintiff could have obtained low-cost or no-cost treatment if necessary. *Id*.

At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any listing. AT 22 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)); 1.18 (Abnormality of a major joint(s) in any extremity); and 1.23 (Non-healing or complex fracture of an upper extremity). AT 22-24. The ALJ next found Plaintiff had the residual functional capacity ("RFC") to perform the following:

> Light work as defined in 20 C.F.R. 416.967(b), but she is limited to no overhead reaching with the right, dominant upper extremity. She is limited to only occasional climbing of ramps and stairs, balancing, stooping, kneeling, climbing, and crawling. She cannot climb ladders or scaffolds. She cannot work around unprotected heights. She can occasionally work around moving mechanical parts. In addition, she is limited to no exposure

> to extremely cold environments.

AT 24. In making this finding, the ALJ considered Plaintiff's symptoms "and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence," medical opinions, and prior administrative findings. *Id*.

When evaluating medical opinion testimony, the ALJ found the opinion of Dr. Y. Ruo, M.D., to be persuasive. AT 26. Dr. Ruo opined Plaintiff could "perform light work and frequent postural activities." *Id*. (citing AT 55-76). The ALJ found the opinion "largely persuasive" because it was supported by the adequate physical functioning Plaintiff exhibited during an orthopedic consultative examination on October 1, 2022. *Id*. (citing AT 821-826). Further, the ALJ found the opinion consistent with Plaintiff's conservative treatment. *Id*. (citing AT 821-826, 37-48). The ALJ also found that while Plaintiff was homeless, there was "no definite evidence that she could not obtain low-cost or no-cost treatment as necessary." *Id*. The ALJ also found little objective evidence her October 2021 surgery was unsuccessful. *Id*. (citing AT 382-820). The ALJ also found Plaintiff's activities of daily living indicated "some physical capacity." *Id*. (citing AT 255-264, 821-835, 37-48). Last, the ALJ generally cited to the qualifications of Dr. Ruo's status as a highly-qualified state agency physician. *Id*.

In contrast, the ALJ found the opinion of Dr. Dale Van Kirk, M.D., who evaluated Plaintiff in her October 1, 2022 consultative examination, to be unpersuasive. *Id*. Dr. Van Kirk opined that Plaintiff could

> lift and carry no more than 5 pounds frequently and 10 pounds occasionally, could stand and walk for only 4 hours in an 8-hour workday, would need to sit down and rest for a brief period periodically throughout a workday, was limited to only occasional postural activities, was restricted to only occasionally manipulative activities with the right upper extremity, and should avoid extremely cold or damp environments.

*Id*. (citing AT 821-826). The ALJ found this opinion was not supported by Plaintiff's "adequate functioning" in the same consultative examination. *Id*. Further, the ALJ found that this opinion was inconsistent with the conservative nature of Plaintiff's treatment since July 2022, the success of Plaintiff's surgeries and little evidence of additional

complications, and that the opinion was inconsistent with Plaintiff's daily activities. AT 26-27 (citing AT 821-826, 382-820, 255-264, 827-835, 47-48).

Based on the RFC, the ALJ determined at step four that Plaintiff does not have past relevant work. AT 27. However, the ALJ found Plaintiff capable of performing other jobs in the national economy, such as (i) dispatcher, Dictionary of Occupational Titles ("DOT") #222.587-038, light, SVP 2, with approximately 22,000 jobs nationally; (ii) storage facility rental clerk, DOT #209.587-026, light, SVP 2, with approximately 61,000 jobs in the national economy; and (iii) merchandise worker ("marker"), DOT #209.587-034, light, SVP 2, with approximately 167,000 jobs nationally. AT 28.[3] Thus, the ALJ concluded Plaintiff is not disabled. *Id*.

On October 17, 2024, the Appeals Council denied Plaintiff's appeal. AT 1-6. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 15, 19.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred by (1) failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; (2) failing to properly assess the medical opinion testimonies of Dr. Dale H. Van Kirk, M.D., and Dr. Morgen Aita, Ph.D; and (3) failing to resolve inconsistencies between the DOT and VE testimony. Pl. Mot. at 6-22 (ECF No. 10).

In contrast, Defendant argues the ALJ: (1) properly evaluated Plaintiff's subjective symptom testimony; (2) properly analyzed the opinions of Drs. Van Kirk and Aita; and (3) properly undertook a step five analysis. Def. Mot. at 1-10 (ECF No. 12).

/ / /

/ / /

---

[3] "Light" in the ALJ's step-five determination references light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).

"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See DOT, App. C, § II, available at 1991 WL 688702.

## IV. DISCUSSION

### A. Subjective Symptom Testimony

#### 1. Legal Standards

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul,* 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin*., 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line

exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

2. Analysis

Plaintiff argues the ALJ erred by failing to analyze Plaintiff's subjective statements regarding her mental impairments and failing to give clear and convincing reasons to discount Plaintiff's testimony regarding her physical impairments by: (1) providing a blanket summary of the medical evidence; (2) providing unsubstantiated findings regarding Plaintiff's inability to seek more aggressive treatment; (3) improperly rejecting Plaintiff's statements based on her daily activities; and (4) failing to provide remaining reasons that were supported by the record. Pl. Mot. at 8-12.

In contrast, Defendant argues the ALJ properly discounted Plaintiff's subjective symptom testimony because (1) the ALJ reasonably found the objective evidence did not support Plaintiff's allegations; (2) the ALJ reasonably assessed Plaintiff's conservative treatment; and (3) the ALJ reasonably observed that the state medical consultants' opinions supported the RFC finding, and no further analysis of Plaintiff's mental impairments was necessary. Def. Mot. at 5-6.

The ALJ began his analysis by reviewing Plaintiff's testimony. AT 25. Plaintiff testified she experienced: chronic pain and weakness in her right shoulder and back; cold weather exacerbating her pain; difficulty in lifting her right arm above the chest; and testifying to a need to "rest, take breaks, or lie down often throughout the day." *Id*. (citing AT 219-226, 229-237 242-246, 249-272, 275-280, 821-826, 37-48). While the ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, her statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

The ALJ reviewed Plaintiff's medical history regarding her right shoulder. *Id*. The ALJ found Plaintiff had injured her right shoulder in a car accident in December 2020 and underwent surgery in January 2021, only to sustain further injuries and hardware failure in March 2021. *Id*. (citing AT 404, 821-826). The ALJ then found Plaintiff underwent right shoulder and thoracic spine surgeries in October 2021 and found "little objective evidence" that the procedures were unsuccessful or had complications. *Id*. (citing AT 382-820). The ALJ found that despite Plaintiff's allegations of additional symptoms since July 2022, Plaintiff's treatment primarily consisted of over-the-counter medication. *Id*. Therefore, the ALJ concluded that a lack of more "aggressive" treatment showed that Plaintiff's conditions are not debilitating. *Id*. (citing AT 821-826, 37-48). While the ALJ found that Plaintiff is homeless and may lack financial resources, the ALJ nevertheless concluded that "there is no definite evidence that she cannot obtain low-cost or no-cost treatment as necessary." *Id*.

Further, the ALJ cited to a consultative examination from October 1, 2022, where Plaintiff was found to have an "obvious non-union" and "diminished range of motion in her right shoulder," but found Plaintiff "retained about 100 degrees of abduction and 110 degrees of forward flexation." *Id*. (citing AT 821-826). Regarding Plaintiff's back, the ALJ determined Plaintiff also had a diminished range of motion but was able to walk around the examination room without a limp. *Id*. The ALJ found Plaintiff was able to do things such as sit comfortably and help herself on and off the examination table. *Id*. The ALJ found Plaintiff exhibited normal range of motion, full strength in her extremities, and while she showed decreased sensation in the left side of her back, exhibited normal sensation in the lower extremities. *Id*.

The ALJ also analyzed Plaintiff's daily activities, finding them not as limited "to the extent one would expect, given the complaints of disabling symptoms and limitations." AT 25. The ALJ found Plaintiff to be independent in her personal care, able to prepare simple meals, do laundry, shop, drive and ride a bicycle, and could use her upper right extremity for writing, using a fork, and using a phone. AT 25-26 (citing AT 255-264, 821-

835, 37-48.) Last, the ALJ noted that Plaintiff's obesity may have had an impact on her impairments. AT 26.

The Court finds the ALJ has properly found that Plaintiff's daily activities of being independent in her personal care, doing laundry, preparing meals, and shopping were inconsistent with her subjective symptom testimony. *See Smartt v. Kijakazi*, 53 F. 4th 489, 499-500 (9th Cir. 2022) (finding an ALJ reasonably concluded a plaintiff's activities including cooking, cleaning, doing laundry, and other chores amounted to daily activities inconsistent with the plaintiff's subjective symptom testimony).

However, the Court finds the ALJ erred in concluding that Plaintiff's failure to seek treatment undermined Plaintiff's subjective symptom testimony. First, while the ALJ concluded that "there is no definitive evidence [Plaintiff] cannot obtain low-cost or low-cost treatment as necessary," Plaintiff's counsel did raise at her hearing that Plaintiff had "an inability to pay for multiple surgeries and physical therapy and follow-up, even with copays…" AT 25, 52.

Additionally, Plaintiff testified, when asked if any further surgery or medical care were recommended after her October 2021 surgery, that "[her doctors recommended] pain medication and just to alleviate the pain…" AT 43. Plaintiff also denied that any further surgery or medical care were recommended outside of those suggestions, she was told "further surgery would not help," and that her humerus was "completely severed" and "can't be used." AT 40, 43. Hence, "the record does not reflect that more aggressive treatment options were appropriate or available." *Lapierre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). Therefore, the Court concludes ALJ erred when discounting Plaintiff's subjective symptom testimony based on a failure to seek more aggressive treatment. The Court also concludes that the ALJ's error was harmful, as it is not clear from the record that this error was "inconsequential to the ultimate nondisability determination." *See Tommasetti v. Astrue*, 533 F. 3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation omitted).

The Court also agrees with Plaintiff that the ALJ failed to address Plaintiff's

testimony regarding her mental limitations. Plaintiff testified that she has bipolar disorder and borderline personality disorder and suffers from "moments of rage and severe depression." AT 48. The ALJ's analysis did not acknowledge Plaintiff's testimony regarding her mental impairments. An ALJ failing to specify their reasons for finding claimant testimony not credible is typically not harmless error. *See Treichler*, 775 F.3d at 492. Therefore, the Court remands for further administrative proceedings and grants Plaintiff summary judgment on this issue.

**B. Medical Opinion Testimony**

1. <u>Legal Standards</u>

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an

explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

2. Analysis

a. *Dr. Dale H. Van Kirk, M.D.*

Plaintiff argues the ALJ erred by concluding Dr. Van Kirk's findings lacked supportability when the medical opinion testimony's findings actually supported Plaintiff's opined functional limitations. Pl. Mot. 14. Further, Plaintiff argues the ALJ erred in finding Dr. Van Kirk's opinion testimony was not consistent with the medical record by not relying on Plaintiff's medical history and medical evidence and instead examining her treatment history and daily activities. *Id*. at 14-15. Plaintiff also argues the ALJ erred in concluding that "there is little objective evidence that [Plaintiff's October 2021 surgeries] were unsuccessful or involved any complication." Pl. Mot. at 15-17; AT 25 (citing AT 382-820). In other words, the ALJ concluded the October 2021 procedures were successful. In contrast, Defendant argues the ALJ properly evaluated Dr. Van Kirk's opinion based on supportability and that the opinion was consistent with the overall record.

The summary of Dr. Van Kirk's opinion is provided above. The ALJ found that Dr. Van Kirk's testimony was not supported because it was not consistent with the "adequate physical functioning" Plaintiff exhibited during the October 1, 2022 consultative examination. AT 26 (citing AT 821-826). Further, the ALJ found Dr. Van Kirk's opinion to be "inconsistent with the routine and conservative nature of [Plaintiff's treatment]." *Id*. (citing AT 821-826, 37-48). The ALJ also cited the "little evidence that [Plaintiff's] October 2021 surgeries were unsuccessful or involved any complication." AT

26-27 (citing AT 382-820). The ALJ also concluded the fact that the October 2021 right shoulder and thoracic spinal surgeries were successful, did not involve any complications, and Plaintiff's activities of daily living contradicted Dr. Van Kirk's opinion testimony. AT 26-27 (citing AT 382-820, 255-264, 821-835, 37-48).

In sum, while the Court finds the ALJ has met the supportability factor for evaluating Dr. Van Kirk's medical opinion based on Plaintiff's physical functioning during the consultative examination, the Court concludes the ALJ erred in finding that the opinion was inconsistent with the record. The Court agrees with Plaintiff that the ALJ erred in concluding that the record demonstrates her October 2021 surgeries were successful. Pl. Mot. at 15. X-ray imaging of Plaintiff's right shoulder prior to her surgeries showed "likely remote failure with subsequent nonunion and suboptimal healing of the midshaft humerus fracture" from Plaintiff's January 2021 procedure. AT 326, 414. Nearly a year after Plaintiff's October 2021 surgeries, Dr. Van Kirk observed an "obvious nonunion" on Plaintiff's right shoulder.[4] AT 823. Plaintiff's testimony in justifying a failure to seek more aggressive treatment was based on doctors explaining that her humerus was "completely severed," and that "[i]t can't be used." AT 40. Therefore, the Court concludes that the ALJ's finding that the October 2021 procedures were successful lacks substantial evidence.

Further, the Court finds that the ALJ's conclusions regarding Plaintiff's failure to obtain more aggressive treatment is not supported by substantial evidence, leaving Plaintiff's daily activities as the only remaining evidence supporting the ALJ's conclusion that Dr. Van Kirk's testimony is not consistent with the record. The Court concludes that because most of the ALJ's rationale for discounting Dr. Van Kirk's medical opinion testimony is not supported by substantial evidence, the ALJ has erred and grants summary judgment in favor of Plaintiff on this issue.

[4] "A nonunion is a fracture that's failed to heal." *Malunion and Nonunion Fractures*, CLEVELAND CLINIC (Jan. 23, 2025), https://my.clevelandclinic.org/health/diseases/malunion-nonunion-fracture.

b. *Dr. Morgen Aita, Ph.D.*

Plaintiff argues the ALJ erred by concluding that Dr. Aita's medical opinion was unsupported and by rejecting the opinion based on Dr. Aita's reliance on his own clinical evaluation of Plaintiff and her self-reported symptoms. Pl. Mot. at 18-19. Plaintiff further argues the ALJ erred in finding Dr. Aita's opinion inconsistent with a lack of treatment and Plaintiff's daily activities. *Id*. at 19. Last, Plaintiff argues the ALJ erred by ignoring other evidence showing ongoing psychiatric symptoms. *Id*. at 19-20. Conversely, Defendant argues Dr. Aita's medical opinion testimony was properly discounted based on supportability and consistency factors. Def. Mot. at 4-5.

The ALJ examined Dr. Aita's opinion in his step two analysis. AT 22. Dr. Aita opined that Plaintiff had a "significantly limited ability to interact appropriately with others, adapt to usual work stress, complete a normal workday or workweek, and respond appropriately to changes in a work setting." *Id*. (citing Ex. 827-835). The ALJ concluded that Dr. Aita's opinion testimony lacked supportability because the consultative examination showed adequate mental functioning and was inconsistent with other medical records documenting adequate mental functioning. AT 22 (citing AT 461-462, 821-826, and 827-835). Further, the ALJ found Dr. Aita's opinion to be inconsistent with the lack of evidence of ongoing medical treatment, and while acknowledging Plaintiff's homelessness and lack of financial resources, found "no definitive evidence that [Plaintiff] cannot obtain low-cost or no-cost treatment as necessary." *Id*. The ALJ also found Dr. Aita's opinion to be inconsistent with Plaintiff's ability to "get along with authority figures, go out alone, follow written instructions, pay attention as needed, and finish what she starts." *Id*. (citing AT 255-265). The ALJ also found the medical expert opinion to be inconsistent with Plaintiff's daily living activities, such as being independent in personal care, being able to drive, use public transit and ride-share services, reading, using the internet, managing finances, preparing simple meals, doing laundry, and shopping, because these activities indicate "some mental capacity." *Id*. (citing AT 255-264, 821-835, 37-48).

In sum, the ALJ identified evidence within Dr. Aita's consultative examination to find that his medical opinion testimony lacked supportability. Further, the Court finds that even though the ALJ lacked substantial evidence to conclude that despite Plaintiff's lack of financial resources, she could have still obtained no-cost or low-cost treatment, there was substantial evidence to support the ALJ's finding of inconsistency through Plaintiff's admissions regarding her behavior around authority figures and her daily living activities. Therefore, the Court concludes the ALJ did not err in discounting Dr. Aita's medical opinion testimony. The Court grants Defendant summary judgment and denies Plaintiff summary judgment on this issue.

**C. Step Five Analysis**

1. Legal Standards

At Step Five, where a plaintiff has established that they are unable to perform any past relevant work, the burden shifts to the Commissioner to demonstrate that "the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett*, 180 F.3d at 1100).

The Court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnha*rt, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. *Id*.; *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, *see Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2. <u>Analysis</u>

Plaintiff argues the ALJ erred in determining Plaintiff could work as a dispatcher, storage-facility rental clerk, and maker because he failed to resolve an apparent inconsistency with the VE and the RFC's limitation to "no overhead reaching with the right, dominant, upper extremity." Pl. Mot. 20-22. Conversely, Defendant argues that there is nothing in the DOT descriptions of any of these occupations where an obvious or apparent conflict would arise. Def. Mot. at 7-10.

The Court agrees with Defendant that an obvious or apparent conflict has not arisen between the VE testimony and the DOT descriptions. "For a difference between an expert's testimony and the [DOT] listings to be fairly characterized as a conflict, it must be obvious and apparent… [meaning] that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F. 3d 804, 808 (9th Cir. 2016). In *Gutierrez*, the court "held that a claimant could perform her work as a cashier despite her inability to reach above shoulder level with the dominant hand because there was no apparent or obvious conflict between the VE's testimony and a general requirement for frequent reaching." *Ibach v. Colvin*, 2017 WL 651940 (E.D. Cal. Feb. 15, 2017) (citing *Gutierrez*, 844 F. 3d at 808).

Here, the requirements for a dispatcher involve stamping, stenciling lettering, or tagging packages, and reading addresses. DOT 222.587-038. The role of a storage-facility rental clerk requires leasing storage space, assisting customers in the selection of storage unit size, recording terms on a rental agreement form, and loading and monitoring camera operations to surveil the facility. DOT 295.367-026. The role of a marker requires marking and attaching price tickets to merchandise, "t[ying], glu[ing], sew[ing], or stapl[ing] price tickets to each article," and pressing the lever of the mechanism that affixes the ticket to the article. DOT 209.587-034.

The Court concludes that overhead reaching is not essential, integral, or expected for any of these occupations. *See Guiterrez*, 844 F. 3d at 808. Therefore, the Court concludes there was no obvious or apparent conflict between the VE testimony and the RFC limitations. Accordingly, the Court grants Defendant summary judgment on this issue and denies Plaintiff summary judgment on this issue.

## V. CONCLUSION

In conclusion, the Court grants summary judgment in favor of Plaintiff on the following issues, finding (1) the ALJ erred in discounting Plaintiff's subjective symptom testimony; and (2) the ALJ erred in discounting Dr. Van Kirk's medical opinion testimony. The Court grants summary judgment in favor of Defendant on the following issues: (1) the ALJ did not err in discounting Dr. Aita's medical opinion testimony; and (2) the ALJ did not err in his step five analysis.

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler,* 775 F.3d, at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether Plaintiff was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed but must sufficiently analyze whether there are clear and convincing reasons for discrediting Plaintiff's testimony and whether Dr. Van Kirk's opinion meets the supportability and consistency standards as described in 20 C.F.R. §§ 416.920c(c)(1)-(2). The Court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The Court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find Plaintiff disabled during the entirety of the relevant period; may find Plaintiff eligible for some type of closed period of disability benefits; or may find that Plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

## ORDER

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 10) is GRANTED IN PART AND DENIED IN PART;
2. The Commissioner's cross-motion (ECF No. 12) is GRANTED IN PART AND DENIED IN PART;

3.! The final decision of the Commissioner is REVERSED AND REMANDED

Dated: July 16, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, bole.3056.25.ss.msj